**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

LYNN MACY,

              Plaintiff,

      v.

CSA-18 SPECIAL DISTRICTS PUBLIC WORKS,

              Defendant.

Case No. 5:24-cv-00902-AB-SP

**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

      This Report and Recommendation is submitted to the Honorable André Birotte Jr., United States District Judge, pursuant to the provisions of 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.

**I.**

**INTRODUCTION**

      On April 26, 2024, plaintiff Lynn Macy, proceeding pro se, initiated this action by filing a civil rights Complaint against defendant CSA-18 Special Districts Public Works pursuant to 42 U.S.C. §§ 1983 ("§ 1983") and 1985 ("§ 1985") and state law claims. Plaintiff alleged generally that defendant trespassed on plaintiff's private property and caused loss. Plaintiff brought claims for (1) unreasonable search; (2) municipal and supervisorial liability under § 1983; (3) intentional infliction of emotional distress

1

("IIED"); (4) forced demolition permit; (5) forced address; (6) trespass; (7) failure to do public record's requests; and (8) excessive fines.

On May 30, 2024, plaintiff filed a First Amended Complaint ("FAC") against defendant. Plaintiff again alleged generally that defendant trespassed on plaintiff's private property and caused loss. Plaintiff brought the same claims as the original Complaint. Defendant filed a motion to dismiss the FAC on June 20, 2024, which the parties fully briefed. On July 21, 2024, plaintiff filed a motion for summary judgment, which the court denied without prejudice pending resolution of the motion to dismiss. *See* docket no. 30.

Plaintiff then filed a second amended complaint ("proposed SAC") on July 29, 2024, while the motion to dismiss the FAC was still pending. Defendant filed objections, and plaintiff filed a request to accept the proposed SAC. The court denied the request to accept the proposed SAC and struck the proposed SAC, pending resolution of the motion to dismiss the FAC. Docket no. 34.

On August 15, 2024, the court issued a Report and Recommendation ("R&R") recommending that the District Court grant defendant's motion to dismiss and dismiss the FAC without prejudice and with leave to amend. Docket no. 35. The court found the FAC violated Rule 8 as to plaintiff's federal causes of action; plaintiff's state law claims were not legally cognizable because California public entities are immune from tort liability and common law causes of action, except as provided by statute; and even if plaintiff's state law claims were legally cognizable, the court should decline to exercise supplemental jurisdiction over them.

Plaintiff filed another proposed second amended complaint ("second proposed SAC") on August 23, 2024. Four days later, plaintiff filed a request to strike the second proposed SAC because it was "accidentally submitted . . . without USC statutes." The court stated that given an R&R addressing the merits of plaintiff's FAC was pending review by the District Judge, any amended complaint filed that superseded the FAC was premature. The court, therefore, granted plaintiff's request to strike and struck the second

2

proposed SAC as premature.  Docket no. 39.  The court reminded plaintiff that "until the District Judge issues an order addressing the recommendations set forth in the R&R, plaintiff shall refrain from filing a SAC."  *Id.*

On August 29, 2024, plaintiff filed yet another Second Amended Complaint ("SAC").  Docket no. 41.  Defendant objected to service of the SAC as premature.  On September 4, 2024, the court sustained defendant's objection and ordered the SAC held in abeyance until the District Judge addressed the R&R and the court issued an order removing the abeyance.  Docket no. 42.

On July 11, 2025, the District Court accepted the findings and recommendation in the R&R and ordered that defendant's motion to dismiss the FAC was granted, the FAC was dismissed without prejudice and with leave to amend, and the SAC filed on August 29, 2024 was removed from abeyance and became the operative complaint in this matter.  Docket no. 49.

On July 25, 2025, defendant filed a Motion to Dismiss Plaintiff's SAC ("MTD").  Docket no. 50.  Plaintiff filed an Opposition to the MTD ("Opposition") on August 6, 2025.  Docket no. 52.  Defendant filed a Reply ("Reply") on August 18, 2025.  Docket no. 54.

Liberally construing the SAC's allegations, the court finds the SAC fails to state a claim.  Because this is plaintiff's third attempt at stating a claim and the same deficiencies persist, it is recommended that defendant's Motion to Dismiss be granted, and the SAC be dismissed with prejudice and without leave to amend.

## II.

## ALLEGATIONS OF THE SECOND AMENDED COMPLAINT

In the SAC, plaintiff alleges generally that defendant CSA-18 Special Districts Public Works, "a public entity located in the County of San Bernardino," trespassed on plaintiff's private property and caused loss.  Defendant's supervisors, Glen Jacklin and Rudy Guerrero, ordered two workers to trespass numerous times onto plaintiff's property.  SAC ¶¶ 7, 14.  "On & for some time prior to 2021 (& continuing to the present date),"

defendant damaged plaintiff's property and admitted it to the Sheriffs.  SAC ¶¶ 7-8. Defendant cut down plaintiff's cables many times and once unbolted cable in front of Jeff Macy, Josiah Macy, and Jodiah Macy.  SAC ¶ 7.  Defendant's cutting down plaintiff's cables caused 12 glass lights to be broken, and defendant left the broken glass shards all over plaintiff's private road.  SAC ¶¶ 7-8.  Defendant has been dumping base rock, trash, and water pipes on plaintiff's property for years without permission.  *Id.*

Plaintiff alleges that defendant's failure to maintain Burnt Mill Canyon Road, a public road adjacent to plaintiff's property, is religious discrimination.  SAC ¶ 8. Plaintiff has been unable to drive to the lower side of plaintiff's property and has had to walk miles to get to her property to perform demolitions and trash removal, as required by San Bernardino County Building & Safety Division on November 5, 2020.  *Id.*

On February 16, 2023, plaintiff made a claim based on the above with County of San Bernardino Risk Management ("Risk Management") against defendant, but the claim was denied.  *Id.*  Plaintiff discovered on February 27, 2023 that "[s]ince 2021 until today," defendant did not file plaintiff's claim with Risk Management, which defendant claimed to have filed in 2021.  SAC ¶¶ 8, 37.  Two months later, defendant said Risk Management denied plaintiff's claim, but did not give plaintiff any paperwork or a case number to prove the denial.  *Id.*

Defendant told plaintiff that defendant ordered supervisors to steal "sign" and trespass onto plaintiff's property.  SAC ¶ 8.  Defendant stole plaintiff's no trespassing signs that held up chairs across Macy Land and stole the chains.  *Id.*  Roughly 75-100 yards onto plaintiff's property, defendant stole another no trespassing sign, thinking it belonged to defendant.  *Id.*  Defendant "also cut down tree branches to grind & steal Plaintiffs 5/8" chain, [and] stole[] Plaintiff's fences . . . that were chained & locked onto Plaintiff's tree."  *Id.*  Defendant cut down plaintiff's cables and took down plaintiff's chain to the planned Yeshua religious temple site.  *Id.*  Defendant wants to keep trespassing onto plaintiff's property to dump base rock and park tractors on plaintiff's property.  *Id.*

4

Defendant colluded with San Bernardino County Code Enforcement to trespass onto plaintiff's property and "constantly giv[e] notice of violations as 'public nuisance charges,'" which amounts to elder abuse. SAC ¶ 9. For 18 years, plaintiff has been receiving "unfounded criminal Code violations notices to extort money from Plaintiff," such that plaintiff and her family had to remove "trash & demo house" even though defendant was dumping the trash, base rock, and water pipes onto plaintiff's property. *Id.* (citing incident report numbers TPR2200512, TPR2101862, TPR2101994, TPR2200594, TPR2201407, TPR2101443, TPR2200032, and TPR2201014). On November 7, 2023, San Bernardino County Code Enforcement also fined plaintiff $100 for having an RV on Macy Land, even though defendant is responsible for the RV being on plaintiff's land because defendant cut, grinded, and stole plaintiff's cables/chains and removed plaintiff's no trespassing signs, which would have prevented squatters and the RV from being on plaintiff's property. *Id.* Defendant conspired with the San Bernardino County Code Enforcement to fine plaintiff. *Id.* Plaintiff appealed the fine, won the appeal, and received $100 back. *Id.* "Plaintiff has factually won every appeal against the County of San Bernardino." *Id.*

The "County of San Bernardino & Land Use Services Department, ET AL. mockingly offered Plaintiff $500 to settle all cases & 'property damage resulting or to result from the accident that occurred on or about January 4, 2023 at or near Cedarpines Park &/or Lake Arrowhead, CA.'" SAC ¶ 10.

Based on the above allegations, plaintiff brings six claims: (1) Fourth Amendment violations; (2) municipal and supervisorial liability under § 1983; (3) IIED (titled, "invasion of privacy"); (4) trespass; (5) destruction of private property; and (6) extortion. SAC ¶¶ 12-49. Plaintiff requests compensatory damages, punitive damages, interest, and costs. SAC at 26.

//

//

5

# III.

# <u>LEGAL STANDARD</u>

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal for failure to state a claim "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A court may not dismiss a complaint under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir. 1994).

"When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. This plausibility standard does not amount to a probability requirement, "but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

"[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). The complaint must both "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively . . . [and] must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

6

Where a plaintiff appears pro se in a civil rights case, the court must construe the pleadings liberally and afford the plaintiff any benefit of the doubt. *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988). The rule of liberal construction is "particularly important in civil rights cases." *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992). Nonetheless, in giving liberal interpretation to a pro se civil rights complaint, courts may not "supply essential elements of claims that were not initially pled." *Ivey v. Board of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." *Id.*; *see also Jones v. Community Redev. Agency*, 733 F.2d 646, 649 (9th Cir. 1984) (finding conclusory allegations unsupported by facts insufficient to state a claim under § 1983). "The plaintiff must allege with at least some degree of particularity overt acts which defendants engaged in that support the plaintiff's claim." *Jones*, 733 F.2d at 649 (internal quotation and citation omitted).

## IV.

## DISCUSSION

### A.   The SAC Fails to Comply with Rule 8

Defendant argues that the SAC still does not comply with Rule 8. MTD at 14.[1] The court agrees.

Rule 8 of the Federal Rules of Civil Procedure requires a plaintiff to provide a defendant fair notice of the claims against it. Fed. R. Civ. P. 8(a)(2); *Twombly*, 550 U.S. at 555. Claims must be pled with sufficient specificity that a defendant is on notice of the allegations against it so that defendant can adequately proffer a defense.

The court agrees the SAC continues to suffer from many of the same deficiencies the court noted in the R&R recommending dismissal of the FAC, namely, it fails to provide defendant with a concise summary of which specific individuals violated her rights, when exactly these violations occurred, and how the facts underlying plaintiff's

---

[1]   Citations to the parties' filings are to the page numbers assigned by the court's CM/ECF system.

7

claims support cognizable federal claims. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002) (A plaintiff must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." (internal quotation marks and citation omitted)).

First, while the SAC alleges the events occurred "[o]n & for some time prior to 2021 (& continuing to the present date)," such time period is too broad to sufficiently identify when any of the alleged events occurred. SAC at 4. As in the FAC, the SAC alleges that defendant has been trespassing on plaintiff's property, identified as "Macy Land," "for years" and that plaintiff "has been getting unfounded criminal Code violation notices" for 18 years. SAC at 4-5, 13. As in the FAC, the SAC describes specific incidents of defendant's conduct, such that defendant "took down Plaintiff's cables," "took down another 'No Trespassing, Kids at Play' sign," and alleges plaintiff has report numbers for most incidents, but does not provide specific dates for when these events occurred or when plaintiff reported them. SAC at 4, 6. The SAC does identify the date of an unspecified accident (January 4, 2023) and the date of one citation (November 7, 2023) (SAC ¶¶ 9-10), but alleges nothing to specify when the events at the heart of her case occurred. Thus, as with the FAC, the SAC violates Rule 8 for its failure to provide specific dates or clear timelines for the facts alleged.

Second, as in the FAC, the SAC, with limited exception, fails to identify the specific CSA-18 employees who are allegedly responsible for violating plaintiff's rights. Plaintiff alleges that defendant admitted it caused the destruction of plaintiff's private property, defendant told plaintiff that Risk Management denied plaintiff's claim, and defendant told plaintiff that it "ordered supervisors to steal sign & trespass onto Plaintiff's property," but does not identify the supervisors and employees alleged to have performed these acts. SAC at 2-4. The SAC does, however, identify Glen Jacklin and Rudy Guerrero as the supervisors who allegedly ordered two workers to trespass onto plaintiff's property, unbolt a chain off plaintiff's sign, destroy plaintiff's 12 glass jars, and steal plaintiff's signs and bolts. SAC at 8. For the most part, however, the SAC

8

violates Rule 8 for its failure to identify specific persons responsible for the alleged conduct.

Accordingly, although the SAC is slightly more specific than the FAC in some respects, the SAC still fails to satisfy the pleading requirements of Rule 8.

**B.** **Plaintiff Fails to State a Federal Claim**

**1.** **Plaintiff Fails to State a Claim Under the Fourth Amendment**

Plaintiff's first cause of action claims defendant violated her Fourth Amendment rights by entering and stealing from her property.  The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV.  Defendant argues the SAC fails to allege sufficient facts to state a Fourth Amendment claim.  MTD at 19-20.  The court agrees.

Plaintiff essentially alleges that all CSA-18 employees are "integral participants to the wrongful entry and inspection" of plaintiff's land and "failed to intervene to prevent these violations," but plaintiff fails to identify who entered her land, when her land was entered, where the land is located, who failed to intervene, and what the circumstances were surrounding the incidents of alleged trespass.  *See* SAC ¶¶ 13-15.  Plaintiff's identification of Glen Jacklin and Rudy Guerrero as supervisors who allegedly ordered the trespass does not identify who the alleged trespassers were or when the order took place.  Plaintiff's statement that the alleged trespassers unreasonably searched, trespassed, stole, and destroyed plaintiff's private property "multiple times on & for some time prior to 2021 (& continuing to the present date)" does not indicate when these events allegedly occurred.  As the court previously found, nonspecific allegations that some unknown individuals entered plaintiff's land and stole items at some unknown time are not sufficient to state a Fourth Amendment claim.

Accordingly, plaintiff's Fourth Amendment claim should be dismissed.

//

**2.    Plaintiff Fails to State a *Monell* Claim**

Plaintiff's second cause of action alleges municipal and supervisory liability for defendant's employees' unconstitutional actions.  Defendant argues the SAC fails to allege sufficient facts to state a *Monell* claim.  MTD at 20-22.  The court agrees.

A local government entity, such as CSA-18, "may not be sued under § 1983 for an injury inflicted solely by its employees or agents.  Instead, it is only when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."  *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).  To challenge a policy or action, a plaintiff must "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury."  *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997).  The policy must be an "official policy" – *i.e.*, an "act[ ] which the municipality has officially sanctioned or ordered" – in other words, a "deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question."  *Pembaur v. Cincinnati*, 475 U.S. 469, 480 & 483, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986).  Thus, CSA-18 may not be held liable for the alleged actions of its employees unless "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted or promulgated by that body's officers," or if the alleged constitutional deprivation was "visited pursuant to a governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels."  *Monell*, 436 U.S. at 690-91.  To impose *Monell* liability, the policy or custom must be the "moving force behind the constitutional violation."  *Gordon v. Cnty. of Orange*, 6 F.4th 961, 973 (9th Cir. 2021).

Here, plaintiff has not alleged an applicable policy that defendant has officially sanctioned or ordered that caused her alleged injury.  Plaintiff cites San Bernardino

10

County Municipal Code Sections 601 and 602, but plaintiff fails to allege how Sections 601 and 602, which are general statements regarding upholding the law and ethics, amount to a policy of ordering employees to trespass and destroy property and were the moving force behind the alleged constitutional deprivation.[2]  SAC ¶¶ 19, 21. Additionally, plaintiff has not alleged facts from which it can be plausibly inferred that there is a widespread practice or custom of defendant ordering employees to trespass and destroy property.

Plaintiff's allegations that defendant "inadequately supervised, trained, controlled, assigned, & disciplined" its officers and other personnel, including Supervisors Glen Jacklin & Rudy Guerrero, and that "County Officers . . . admitted to being improperly trained" at a San Bernardino hearing on February 5, 2024, are not sufficient to plead a municipal and supervisory liability claim under *Monell*.  *SAC* ¶¶ 18, 22.  Defendant may be held liable for a failure to supervise its employees if such failure results from a custom or policy of inaction.  *Johnson v. County of Riverside*, 2015 WL 13649444, at *13 (C.D. Cal. Feb. 17, 2015); *see Jackson v. Barnes*, 749 F.3d 755, 763 (9th Cir. 2014) (holding that complaint stated claim for policy of inaction where officer "routinely declined to read Miranda warnings" placing department on notice that failure to supervise would lead

_____

[2]     Section 601 states:  "County officers and employees shall uphold the Constitution of the United States, the Constitution of California, and this Charter, and shall carry out impartially the laws and regulations of the United States, California, and the County.  County officers and employees shall discharge faithfully their duties, recognizing that the public interest is paramount."
https://codelibrary.amlegal.com/codes/sanbernardino/latest/sanberncty_ca/0-0-0-146729#JD_CharterSec.601 (last visited Mar. 24, 2026).

Section 602 states:  "The Board of Supervisors shall establish by ordinance training requirements pertaining to ethics, the prohibition of discrimination and harassment, the prohibition of nepotism, and other areas of ethics pertinent to public service."
https://codelibrary.amlegal.com/codes/sanbernardino/latest/sanberncty_ca/0-0-0-146731#JD_CharterSec.602 (last visited Mar. 24, 2026).

to constitutional violation); *Vasquez v. City of Santa Paula*, 2015 WL 12734071, at *4 (C.D. Cal. Mar. 11, 2015) ("[F]ailure to supervise during a single incident does not establish a policy or longstanding practice or custom required for *Monell* liability."). Defendant may be held liable for a failure to train its employees only if "the failure to train amounts to deliberate indifference to the rights of persons" impacted by the inaction. *City of Canton v. Harris*, 489 U.S. 378, 388, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989). In order to state a claim for failure to train, a plaintiff must allege facts from which it can be plausibly inferred that "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Id*. at 390. The Supreme Court has emphasized that "[d]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. 51, 61, 131 S. Ct. 1350, 179 L. Ed. 2d 417 (2011) (citation and internal quotation marks omitted). "Thus, when [a local entity's] policymakers are on actual or constructive notice that a particular omission in their training program causes [the entity's] employees to violate citizens' constitutional rights, the [entity] may be deemed deliberately indifferent if the policymakers choose to retain that program." *Id.* (citation omitted).

Here, plaintiff has not alleged that defendant engaged in a custom or policy of inaction. Plaintiff does not allege that defendant's employees engaged in prior unconstitutional conduct placing defendant on notice that failure to supervise may lead to constitutional violations. Nor does plaintiff allege that defendant maintained a training policy that amounts to a deliberate indifference to constitutional rights. Further, plaintiff has failed to allege facts sufficient to establish that defendant's training policy was deficient, or that defendant was deliberately indifferent to any alleged defects in its training programs. Plaintiff's allegation that defendant "maintained grossly inadequate

procedures" (SAC ¶ 18) is not sufficient to allege a *Monell* claim for failure to supervise or train.

In sum, because plaintiff's *Monell* claim against defendant is unsupported by any factual allegations from which it could be plausibly inferred that a constitutional deprivation was the result of any policies or customs of CSA-18, or that any policies or customs of CSA-18 were the "moving force" behind any alleged constitutional deprivation, or that an obvious need for more or different training resulted in deliberate indifference, or that defendant engaged in a custom or policy of inaction, plaintiff has failed to state a *Monell* claim that is plausible on its face. *See Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (finding that plaintiff's "*Monell* and supervisory liability claims lack any factual allegations that would separate them from the 'formulaic recitation of a cause of action's elements' deemed insufficient by *Twombly*").

Accordingly, plaintiff's *Monell* claim should be dismissed.

## C.   Plaintiff Fails to State a Timely, Legally Cognizable State Law Claim

In addition to her federal claims, plaintiff also brings four state law claims that are not timely or legally cognizable:  IIED/invasion of privacy, trespass, destruction of private property, and extortion.  SAC ¶¶ 23-49.

### 1.   The State Law Claims are Untimely

Defendant argues plaintiff's state law claims are untimely.  MTD at 23.  The court agrees.

As an initial matter, defendant requests the court to take judicial notice of the Claim Rejection Letter to plaintiff dated March 24, 2023 with attached proof of service executed on the same date, which is Exhibit A to defendant's request.  Defendant's Request for Judicial Notice ("RJN"), Docket no. 50-1 at 2-5.  Defendant also asks the court to take judicial notice of the fact that plaintiff's claim was rejected on March 24, 2023.[3]  RJN at 2.

---

[3]    The RJN actually states that the Claim Rejection Letter was sent to plaintiff on March **23**, 2023 and asks the court to take judicial notice that the claim was rejected

13

The court may "take judicial notice of . . . matters of public records" without converting a motion to dismiss under Rule 12(b)(6) to a motion for summary judgment. *Reyn's Pasta Bella, LLC v. Visa USA, Inc.,* 442 F.3d 741, 746 n.6 (9th Cir. 2006); *see also Western Fed. Sav. & Loan Ass'n v. Heflin Corp.,* 797 F. Supp. 790, 792 (N.D. Cal. 1992) (taking judicial notice of county public records).  Facts contained in public records "not subject to reasonable dispute" are considered appropriate subjects of judicial notice. *Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1025 n.2 (9th Cir. 2006) (citations omitted).

Plaintiff does not substantively oppose the RJN.  The unopposed RJN is granted as to the Claim Rejection Letter rejecting plaintiff's claim on March 24, 2023.  *See Roy v. Contra Costa Cnty.*, 2015 WL 5698743, at *2 n.6 (N.D. Cal. Sept. 29, 2015) (taking judicial notice of city defendants' notice rejecting claim) (citing *Wilhite v. City of Bakersfield*, 2012 WL 273088, at *15 n.26 (E.D. Cal. Jan. 30, 2012) (noticing Government Claim rejection letter)).

Returning to the question of whether plaintiff timely filed the state law claims in this action, defendant argues that the deadline to file the state law claims was within six months of the denial, which was September 24, 2023.  MTD at 23; *see* Cal. Gov't Code § 945.6.  Plaintiff filed this action on April 26, 2024, seven months after the deadline for filing.  Docket no. 1.  Under the California Government Claims Act, an individual who seeks to file suit against a public entity or its employees for money damages must first file that claim with the entity.  Cal. Gov't Code §§ 905, 950.  If the claim is denied, the individual must file a suit within six months, and if the agency does not respond to the claim, the individual must file a lawsuit within two years of the accrual of the cause of action.  Cal. Gov. Code § 945.6.  If a plaintiff who sues does not "allege facts demonstrating or excusing compliance with" this requirement, their complaint may be

---

on March **23**, 2023.  This reference to March 23 rather than March 24 appears to be a scrivener's error.  The letter attached as Exhibit A indicates the claim was rejected on March **24**, 2023, which is when notice was provided to plaintiff.  *See* RJN at 2-5.

14

dismissed for failure to state a claim. *State of California v. Superior Court*, 32 Cal. 4th 1234, 1243 (2004).

Here, plaintiff alleges she received notice two months after February 27, 2023 that her claim was denied by Risk Management, but she was allegedly told of the denial by defendant. SAC ¶ 37. Even if plaintiff somehow did not receive the Claim Rejection Letter indicating her claim was denied on March 24, 2023, she acknowledges learning of the denial in approximately April 2023. Plaintiff did not initiate this action until a year later, months after the six-month deadline to file passed.

Accordingly, the court recommends dismissing plaintiff's state law claims as untimely.

**2.      The Alleged Liability Statutes Do Not Provide for Liability Against Defendant for the State Law Claims**

Defendant additionally argues that dismissal of the state law claims is warranted because plaintiff has not alleged statutes providing for liability against defendant for such claims. MTD at 15-19. The court agrees.

As the court previously recognized in dismissing the FAC, public entities are immune from tort liability in California unless otherwise provided by statute. Docket no. 35 at 13 (citing Cal. Gov't Code § 815 ("Except as otherwise provided by statute . . . [a] public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person."); *Miklosky v. Regents of Univ. of Cal.*, 44 Cal. 4th 876, 899, 2 Cal. WCC 773, 188 P.3d 629 (2008) (acknowledging Cal. Gov't Code § 815 bars tort liability against a public entity)). Although plaintiff cites various local, state and federal statutes, none provides for liability against CSA-18, "a public entity located in the County of San Bernardino," for the alleged torts.

**a.      IIED/Invasion of Privacy**

Plaintiff's third cause of action is titled, "Invasion of Privacy (42 U.S.C. § 1983)," but alleges defendant's actions proximately caused plaintiff to suffer damages in the form

of psychological and emotional injuries.[4]  SAC ¶¶ 24-25.  It is a more detailed version of the intentional infliction of emotional distress claim in the FAC, and thus the court construes as an IIED claim.

Plaintiff alleges defendant is liable for IIED under California Civil Code ¶ 1431.2 and the Federal Tort Claims Act.  SAC ¶¶ 28, 30.  Neither of these statutes provides for liability against CSA-18 for IIED/invasion of privacy.  Section 1431.2(a) makes each defendant's liability for non-economic damages several and in proportion to a defendant's fault, rather than joint and several.[5]  This statute does not provide for liability against defendant for IIED.

Plaintiff states that "[t]he Federal Tort Claims Act (FTCA) allows individuals to bring claims against the United States Government for torts, including emotional distress, that occur while government employees are acting within the scope of their employment."  SAC ¶ 30.  But plaintiff's suit is against "a public entity located in the County of San Bernardino," not a federal entity.  SAC ¶ 4.  The FTCA applies to suits against the United States, not county actors, and thus does not provide for liability against CSA-18 for IIED.  *See* 28 U.S.C. § 1346; *see also Spikes v. Simpson*, 2025 WL 1000583, at *1 n.1 (D. Nev. Mar. 31, 2025) ("The FTCA does not apply here because [the plaintiff] alleges that state and county actors, not federal ones, are responsible for her injuries.").

---

[4]  To the extent plaintiff attempts to dress this claim and the other state claims as federal claims by citing federal statutes, plaintiff has not presented cognizable federal legal theories for these claims.  The court finds these claims grounded in state law, and they fail for the reasons discussed herein.

[5]  Cal. Civ. Code § 1431.2(a) states:  "In any action for personal injury, property damage, or wrongful death, based upon principles of comparative fault, the liability of each defendant for non-economic damages shall be several only and shall not be joint.  Each defendant shall be liable only for the amount of non-economic damages allocated to that defendant in direct proportion to that defendant's percentage of fault, and a separate judgment shall be rendered against that defendant for that amount."

16

Accordingly, plaintiff does not cite an applicable statute that provides for liability against CSA-18 for IIED/invasion of privacy.[6]

### b.    Trespass

In plaintiff's fourth cause of action, trespassing without warrant, plaintiff alleges defendant is liable under San Bernardino Municipal Code § 12.24.020 and 25 C.F.R. § 11.411.  SAC ¶¶ 32-35.  Neither of these statutes applies here to provide for liability against CSA-18 for trespass.

---

[6]    Defendant appears to also argue that it is immune from the IIED/invasion of privacy claim under California Government Code § 815.2(b).  MTD at 25.  Section 815.2(b) provides:  "Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability."  A public employee is immune against "injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause."  Cal. Gov't Code § 821.6.  Section 821.6 immunity "extends to actions taken in preparation for formal proceedings."  *Amylou R. v. County of Riverside*, 28 Cal. App. 4th 1205, 34 Cal. Rptr. 2d 319 (1994) (*disapproved of on other grounds by Leon v. County of Riverside*, 14 Cal. 5th 910, 920, 309 Cal. Rptr. 3d 682, 530 P.3d 1093 (2023)).  Defendant cites *VNT Property 1, LLC v. City of Buena Park,* arguing there, the City defendant was immune from state law claims because the City employee defendants' action was in their official capacities when they investigated code violations in a code enforcement proceeding.  2015 WL 12762257, at *10 (C.D. Cal. Aug. 11, 2015) (citing *Shanko v. Lake Cnty.*, 116 F. Supp. 3d 1055, 1067 (N.D. Cal. 2015)).  Defendant argues that based on *VNT Property 1*, plaintiff's claim against defendant fails.  MTD at 25.  But here, defendant has presented no specific argument that its employees are immune from liability under Section 821.6, including whether defendant's employees were acting in their official capacities, and whether they were on plaintiff's property for code enforcement or other formal proceedings.  Nor can the court determine these details from the face of the SAC.  Therefore, the court rejects defendant's argument that defendant is immune from the IIED/invasion of privacy claim under California Government Code § 815.2(b).  *See Basile v. City of Poway*, 2008 WL 11509117, at *3 (S.D. Cal. Jan. 29, 2008) (rejecting dismissal of city under Section 815.2(b) from most common law claims because defendant "presented no argument" that city's employees were immune from liability under Section 821.6, and court could not rule out that city could be liable for its employees' actions).

17

San Bernardino Municipal Code section 12.24.020 states that the bond required to be filed with the City of San Bernardino for public works contracts must comply with Cal. Gov't Code, Title 1, Division 6, Chapter 10.5. https://codelibrary.amlegal.com/codes/sanbernardinoca/latest/sanbernardino_ca/0-0-0-13416#JD_12.24.020 (last visited Mar. 24, 2026). This statute concerns city bond requirements that plaintiff does not plausibly connect to her trespassing claim. Further, as defendant argues, Section 12.24.020 is part of a city municipal code that does not appear to apply to a county public entity. MTD at 7; *see also* https://codelibrary.amlegal.com/codes/sanbernardinoca/latest/sanbernardino_ca/0-0-0-19469 (last visited Mar. 24, 2026). Section 12.24.020 is not an authorizing statute that provides liability against CSA-18 for trespass.

Plaintiff also cites 25 C.F.R. § 11.411, which is a federal criminal statute pertaining to the Bureau of Indian Affairs Courts of Indian Offenses defining criminal trespass. The purpose of the body of regulations that includes § 11.411 is "to provide adequate machinery for the administration of justice for Indian tribes in those areas of Indian country where tribes retain jurisdiction over Indians that is exclusive of State jurisdiction but where tribal courts have not been established to exercise that jurisdiction." 25 C.F.R. § 11.102. Plaintiff has the burden of establishing that § 11.411 confers a private right of action on her. *See Opera Plaza Residential Parcel Homeowners' Ass'n v. Hoang*, 376 F.3d 831, 835 (9th Cir. 2004); *see also Grajeda v. Bank of America, N.A.*, 2013 WL 2481548, *2 (S.D. Cal. June 10, 2013) ("Generally, criminal statutes do not confer private rights of action, and thus any party asserting a private right bears the burden of establishing its existence.") (internal quotation marks omitted; citing district-court decision which cited *Stupy v. U.S. Postal Service*, 951 F.2d 1079, 1081 (9th Cir. 1991)). If the statutory language "itself does not 'display an intent' to create 'a private remedy,' then 'a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute.'" *Ziglar v. Abbasi*, 582 U.S. 120, 133, 137 S. Ct. 1843, 198 L. Ed. 2d

18

290 (2017) (quoting *Alexander v. Sandoval*, 532 U.S. 275, 286-87, 121 S. Ct. 1511, 149 L. Ed. 2d 517 (2001)) (alteration marks omitted).  Plaintiff has not met her burden of establishing a private right of action under § 11.411, nor is it likely she could.  *See Perez v. San Diego County*, 2021 WL 1626334, at *2 (S.D. Cal. Apr. 27, 2021) (finding unlawful trespass claim under § 11.411 barred because "it does not provide a private right of action in a civil action").

Accordingly, plaintiff does not cite an applicable statute that provides for liability against CSA-18 for trespass.

### c.    Destruction of Private Property

In plaintiff's fifth cause of action, destruction of private property, plaintiff alleges that 18 U.S.C. §§ 1361, 1363 and 2232 provide[] a framework for protecting private property from willful damage or destruction" and "make[] it a federal offense to destroy or remove private property."  SAC ¶ 40.  None of these statutes apply here to provide for liability against CSA-18 for destruction of private property.  Section 1361 applies to destruction of property owned by or under the control of the federal government.[7] Section 1363 applies to destruction of property "within the special maritime and territorial jurisdiction of the United States."  18 U.S.C. § 1363.  Section 2232 applies to the destruction or removal of property to prevent seizure by the federal government.[8]

---

[7]    Section 1361 outlines the punishment for "[w]hoever willfully injures or commits any depredation against any property of the United States, or of any department or agency thereof, or any property which has been or is being manufactured or constructed for the United States, or any department or agency thereof, or attempts to commit any of the foregoing offenses."

[8]    Section 2232(a) states:  "Whoever, before, during, or after any search for or seizure of property by any person authorized to make such search or seizure, knowingly destroys, damages, wastes, disposes of, transfers, or otherwise takes any action, or knowingly attempts to destroy, damage, waste, dispose of, transfer, or otherwise take any action, for the purpose of preventing or impairing the Government's lawful authority to take such property into its custody or control or to continue holding such property under

The SAC does not allege that the property is under the ownership or control of the United States government, that the property is within the special maritime and territorial jurisdiction of the United States, or that property was destroyed or removed to prevent seizure by the government.  To the contrary, the SAC alleges that the property is plaintiff's private property and the property damage was caused by defendant.

Accordingly, plaintiff does not cite an applicable statute that provides for liability against CSA-18 for destruction of private property.

### d.    Extortion

In support of plaintiff's sixth cause of action, extortion, plaintiff cites 18 U.S.C. § 1951 (Hobbs Act), 18 U.S.C. § 872, and the Religious Land Use and Institutionalized Persons Act (RLUIPA).  None of these statutes apply here to provide for liability against CSA-18 for extortion.  Section 1951 is a federal statute that imposes criminal punishment on those who affect interstate or foreign commerce by robbery, extortion, and conspiracies to commit those acts.  18 U.S.C. § 1951.  Plaintiff has not alleged facts regarding any interference with interstate or foreign commerce.  Further, "the Hobbs Act does not support a private civil right of action."  *Abcarian v. Levine*, 972 F.3d 1019, 1026 (9th Cir. 2020) (citation omitted).

Section 872 is a federal statute that imposes criminal punishment for extortion by officers or employees of the United States.  18 U.S.C. § 872.  Plaintiff has not alleged any officer or employee of the United States has committed extortion.  Further, Section 872 does not provide for a private right of action.  *See Ang v. Wells Fargo Bank, N.A.*, 2018 WL 6131212, at *3 (C.D. Cal. June 25, 2018) (finding § 872 does not provide a private right of action) (citing *Chrysler Corp. v. Brown*, 441 U.S. 281, 316, 99 S. Ct. 1705, 60 L. Ed. 2d 208 (1979) (criminal statutes never give a civil cause of action unless there is a statutory basis inferring one is given); *Opera Plaza Residential Parcel Homeowners' Ass'n*, 376 F.3d at 835).

---

its lawful custody and control, shall be fined under this title or imprisoned not more than 5 years, or both."

20

Plaintiff alleges that under 42 U.S.C. § 2000cc-2(a), "a plaintiff who asserts a violation of the RLUIPA in a judicial proceeding may obtain 'appropriate relief' against a government." SAC ¶ 48. RLUIPA limits a government's ability to impose or implement land use regulations that impose a substantial burden on a person's religious exercise, including a religious assembly or institution, unless the enforcement is the least restrictive means of enforcing a compelling government interest. 42 U.S.C. § 2000cc(a). Plaintiff has not alleged a land use regulation for the purposes of RLUIPA, *i.e.,* a land use regulation that imposed a substantial burden on her religious activity. Instead, plaintiff alleges that defendant's alleged trespass, failure to maintain roads, removal of signs, and trash disposal will discourage her from building a religious temple. SAC ¶ 49.

Accordingly, plaintiff does not cite an applicable statute that provides for liability against CSA-18 for extortion.

In sum, plaintiff fails to state a legally cognizable claim for the state law causes of action. The court therefore recommends dismissing plaintiff's state law claims.

**D.    Even If Plaintiff's State Law Claims Were Timely and Legally Cognizable, the Court Should Decline to Exercise Supplemental Jurisdiction Over Them**

A district court may decline to exercise supplemental jurisdiction over a state law claim if "the district court has dismissed all claims over which it has original jurisdiction . . . ." 28 U.S.C. § 1367(c)(3); *see also Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1000 (9th Cir. 1997) ("[A] federal district court with power to hear state law claims has discretion to keep, or decline to keep, them under the conditions set out in § 1367(c)"). In deciding whether to exercise supplemental jurisdiction, the court must consider factors including judicial economy, convenience, fairness, and comity. *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173, 118 S. Ct. 523, 139 L. Ed. 2d 525 (1997). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise

jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7, 108 S. Ct. 614, 98 L. Ed. 2d 720 (1988).

Here, plaintiff invokes federal question jurisdiction under 42 U.S.C. §§ 1983 and 1985 and supplemental jurisdiction over her state law claims under 28 U.S.C. § 1367. SAC ¶ 1. Because plaintiff's federal claims fail to satisfy Rule 8 and fail to allege sufficient facts in support of a Fourth Amendment or a *Monell* claim, her only remaining claims are those apparently brought under state law. As discussed, the state law claims are not timely or legally cognizable, but even if they were, the balance of factors favor declining jurisdiction over the state law claims. If plaintiff's state law claims were timely and cognizable, since such claims center on her rights under state and local law, it would be better to have the state court decide those claims. Therefore, for this reason too, plaintiff's state law claims should be dismissed.

**E.      Defendant Has Not Shown Plaintiff Lacks Standing, but Has Shown Jeff Macy Cannot Represent Plaintiff**

Defendant argues plaintiff does not have standing to bring this suit because she is not a licensed attorney. MTD at 27. According to defendant, plaintiff alleges she owns property on Mojave River Road in Cedarpines, California ("Mojave Property"), but in actuality, the Mojave Property is owned by 1611Bible.US, a corporation, which must be represented in court by a licensed attorney. *Id.*; RJN ¶ 2, Ex. B.

As an initial matter, defendant requests the court take judicial notice of the San Bernardino County Office of the Assessor's Property Information Management System-PIMS Package Report for the Mojave River Road property as owned by corporation 1611Bible.US and the fact that 1611BIBLE.US NON-PROFIT is the legal owner of the Mojave River Road properties (which have been combined under APN 0343-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). Docket no. 50-1 at 2, Ex. B. The court may take judicial notice of county records maintained by county recorders and assessors. *See, e.g.*, *Alexander v. Deutsche Bank Nat. Tr. Co.*, 2013 WL 3320455, at *3 (S.D. Cal. July 1, 2013); *Chavez v. Washington Mut. Bank*, 2013 WL 2450128, at *4 (N.D. Cal. June 5, 2013). Plaintiff does not

22

substantively oppose the RJN. The unopposed RJN is granted as to the PIMS Package Report for parcel 0343031050000 ("PIMS Package Report") showing the owner as 1611BIBLE.US NON-PROFIT as sole owner, as a matter of public record. *See Reyn's Pasta Bella, LLC,* 442 F.3d at 746 n.6.

Returning to the question of standing, the court cannot determine from the face of the SAC whether the property at issue in the SAC is the same as the property listed on the PIMS Package Report. In the SAC, plaintiff alleges that the actions occurred on or near "[p]laintiff's property," "[p]laintiff's private property," "[p]laintiff's Macy Land property," and "near Cedarpines Park &/or Lake Arrowhead, CA," and describes her property as "located near Mojave River Rd. End of District 516 B1-D1/C2-D2/C3-D3," adjacent to Burnt Mill Canyon Road, and is 36 acres. *See, e.g.,* SAC ¶¶ 6, 8, 10, 27, 39, 44-45. The PIMS Package Report is by parcel number and contains a legal description that is not helpful based on the allegations in the SAC. Accordingly, on this record, the court rejects defendant's argument that plaintiff lacks standing to bring this suit.

As to defendant's argument that Jeff Macy is engaged in the unauthorized practice of law, the court agrees that he cannot represent plaintiff in this action because he is not an attorney. While plaintiff represented herself in the SAC, the Opposition was submitted and signed by Jeff Macy, noting "Power of Attorney for Plaintiff Lynn Macy; Bible Translator & Director of Religious Organization 1611Bible.us." Opposition at 7. While a non-attorney may appear pro se on their own behalf, a non-attorney litigant has no authority to represent another person other than themselves. *Johns v. County of San Diego*, 114 F.3d 874, 876 (9th Cir. 1997). "A power of attorney does not confer standing to assert another party's constitutional claims or authority to represent another party in court." *Wayne v. Johnson*, 48 F. App'x 679 (9th Cir. 2002) (Mem.) (citing *Johns*, 114 F.3d at 876).

//

//

23

Accordingly, Jeff Macy may not represent plaintiff in this action. Nevertheless, the court considered plaintiff's arguments in the Opposition, just as it considered defendant's arguments in the Motion to Dismiss.[9]

## F.      **Plaintiff Should Not Be Granted Leave to Amend**

Generally, the court must give a pro se litigant leave to amend the complaint "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quotation marks and citations omitted ). Before a pro se civil rights complaint may be dismissed, the court must provide the plaintiff with a statement of the complaint's deficiencies. *Karim-Panahi*, 839 F.2d at 623-24. But where amendment of a pro se litigant's complaint would be futile, denial of leave to amend is appropriate. *See James v. Giles*, 221 F.3d 1074, 1077 (9th Cir. 2000) (finding court may deny leave to amend if deficiencies cannot be overcome by amendment).

Here, further leave to amend should not be granted. The SAC is plaintiff's third effort to state her claims. In recommending dismissal with leave to amend the FAC, the court stated plaintiff may be able to cure the deficiencies by alleging more specific factual allegations, including by identifying specific CSA-18 employees and dates of each incident and by identifying California statutes that provide for liability against a

---

[9]     As required, defendant's counsel included a statement and exhibits in the notice of motion that counsel had "made numerous good faith attempts to meet and confer with [p]laintiff to determine whether an agreement could be reached between the parties," but despite multiple telephone calls and emails (outlined in the statement and attached as exhibits), no agreement was reached between the parties. MTD, Certification of Seonhae Shin re Meet and Confer Compliance with Local Rule 7-3, at 31-40. Plaintiff argues in the Opposition that defendant's counsel "refused to make **any** attempt at settling the issues in the Complaint & only talked about dismissing the case," would not return plaintiff's calls, and "demand[ed] to only meet & confer at her convenient day & time." Opposition at 4. But plaintiff also stated that "counsel in good faith attempted to telephonically meet & confer with [p]laintiff regarding the moving party's objections to [p]laintiff's Complaint," but the parties could not reach an agreement. *Id.* at 6-7. The court finds no impropriety in defendant's meet and confer efforts.

24

public entity and/or its employees for the conduct alleged.  Docket no. 35 at 16.  Plaintiff thereafter filed the SAC, which has, for the most part, failed to correct the deficiencies the court previously identified.  It is thus clear that further amendment would be futile.

## V.

## RECOMMENDATION

IT IS THEREFORE RECOMMENDED that the District Court issue an Order:  (1) approving and accepting this Report and Recommendation; (2) granting defendant's Motion to Dismiss (docket no. 50); and (3) directing that directing that Judgment be entered dismissing the Second Amended Complaint and this action with prejudice and without leave to amend.

DATED:  March 25, 2026

_____
SHERI PYM
United States Magistrate Judge

25